1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ISAIAH DOMINIC HALE,                           No. 2:18-cv-1924-JAM-EFB P

12            Petitioner,

13       v.                                       FINDINGS AND RECOMMENDATIONS

14  DEBBIE ASUNCION,

15            Respondent.

16

17            Petitioner is a California state prisoner who, proceeding with counsel, brings an

18  application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He was convicted in the

19  Sacramento County Superior Court of attempted deliberate and premeditated murder (Pen. Code

20  §§ 187, subd. (a), 664) and firearm enhancements (§§ 12022, subd. (a)(1), 12022.5, subd. (a),

21  12022.53, subds. (b), (c), (d)).  The instant petition raises the following claims: (1) the trial

22  court's failure to properly instruct the jury as to the elements of petitioner's defense violated his

23  Fourteenth Amendment due process rights and Sixth Amendment right to a jury trial; (2)

24  petitioner's trial counsel was ineffective in failing to object to the foregoing instructional error;

25  (3) the state court of appeal unreasonably applied United States Supreme Court precedent when it

26  determined that petitioner was not prejudiced by the trial court's denial of a jury trial as to

27  whether his prior conviction was a 'strike'; and (4) petitioner's Fourteenth Amendment due

28  /////

1

1  process rights were violated when the state court of appeal determined that there was sufficient
2  evidence to support a finding that his prior conviction was a strike.

3      For the reasons stated below, it is recommended that the petition be denied in its entirety.

4                              <u>FACTUAL BACKGROUND</u>

5      Joe Williams ("Joe") - petitioner's co-defendant - was cousins with Julian Williams
6  ("Julian").  In mid- February 2010, Joe phoned Julian and asked him to come to his home and
7  collect an SKS assault-style rifle.  Joe explained that he was currently fighting with his girlfriend,
8  sometimes violently, and was concerned that police responding to a domestic violence incident
9  might discover the gun.  Julian took the gun.

10     On February 28, 2010, Julian had the rifle in his vehicle when he was stopped by police.
11  A victim had told police that they had been verbally threatened by someone claiming to have an
12  SKS rifle and Julian's vehicle matched their description.  Officers found the rifle in the vehicle,
13  confiscated it, and arrested Julian for possession of a firearm.  The next day, Julian posted the six-
14  thousand dollar bail.

15     Soon after, Joe called Julian and demanded payment of three hundred and fifty dollars for
16  the confiscated rifle.  Joe threatened to shoot Julian if he did not comply with the demands.
17  These threats were repeated by phone and voice-mail several times.

18     On March 7, 2010, Julian was at his residence with his girlfriend Zinha Sylvester.  At
19  approximately 10:30 p.m., a gun was fired two or three times at the house.  After investigating,
20  Julian discovered three bullet holes in his garage door.  Julian called Joe and demanded to know
21  whether he was responsible for the shooting.  Joe denied responsibility.  Police arrived shortly
22  thereafter, and Julian informed them of his belief that Joe was responsible.

23     On March 10, 2010, Julian went with Sylvester to a shopping center where she had her
24  eyebrows waxed.  As the two exited the salon, Joe confronted them and again demanded payment
25  for the confiscated rifle.  Julian explained that, having recently posted six-thousand dollar bail, he
26  did not have the money.  Irritated, Joe indicated a willingness to physically fight Julian, but
27  ultimately turned and walked away.
28  /////

Julian continued toward his parked vehicle and, on the way, encountered petitioner. Petitioner had accompanied Joe to the shopping center that day and had watched Joe and Julian nearly come to blows over payment for the gun. To this point, Julian had met petitioner on only one other occasion and had no history with him. Upon seeing Julian, petitioner said something to the effect of "Nigga, you got my gun took. You think we playing." Julian had little time to react before petitioner fired a gun at him several times, from a distance of roughly five or six feet. Julian suffered gunshot wounds to his arm, elbow, and penis. He survived the shooting.

At trial, petitioner stated that he believed Julian was carrying a gun based on the latter's assertion, made during the confrontation with Joe, that he "stay[ed] strapped." He claimed to have seen Julian reach under his shirt and, believing he was going for a gun, chose to fire first. Petitioner stated that he aimed low on Julian's body because he intended only to injure, rather than kill him. Petitioner claimed that he only realized that Julian was not armed after he saw the latter hit the ground with an empty hand.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

I.      Applicable Statutory Provisions

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong

3

1  (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of

2  constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

3          The statute applies whenever the state court has denied a federal claim on its merits,

4  whether or not the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 99-100

5  (2011). State court rejection of a federal claim will be presumed to have been on the merits

6  absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing

7  *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

8  unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

9  "The presumption may be overcome when there is reason to think some other explanation for the

10  state court's decision is more likely." *Id.* at 785.

11                  A.      "Clearly Established Federal Law"

12          The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing

13  legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*,

14  538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established

15  Federal law," but courts may look to circuit law "to ascertain whether . . . the particular point in

16  issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446,

17  1450 (2013).

18                  B.      "Contrary To" Or "Unreasonable Application Of" Clearly Established
19                          Federal Law

20          Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and

21  mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two

22  clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*,

23  529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be

24  given independent effect, and create two categories of cases in which habeas relief remains

25  available).

26          A state court decision is "contrary to" clearly established federal law if the decision

27  "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This

28  includes use of the wrong legal rule or analytical framework. "The addition, deletion, or

                                                    4

alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[1] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[2] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[3] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and

/////

/////

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] *Faretta v. California*, 422 U.S. 806 (1975).

1 when they proceed on the basis of factual error.  *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins,*

2 539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v.*

3 *McCollum*, 558 U.S. 30, 42 (2009).

4   The "unreasonable application" clause permits habeas relief based on the application of a

5 governing principle to a set of facts different from those of the case in which the principle was

6 announced.  *Lockyer*, 538 U.S. at 76.  AEDPA does not require a nearly identical fact pattern

7 before a legal rule must be applied.  *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007).  Even a

8 general standard may be applied in an unreasonable manner.  *Id.*  In such cases, AEDPA

9 deference does not apply to the federal court's adjudication of the claim.  *Id.* at 948.

10   Review under § 2254(d) is limited to the record that was before the state court.  *Cullen v.*

11 *Pinholster*, 131 S. Ct. 1388, 1398 (2011).  The question at this stage is whether the state court

12 reasonably applied clearly established federal law to the facts before it.  *Id.*  In other words, the

13 focus of the § 2254(d) inquiry is "on what a state court knew and did."  *Id.* at 1399.

14   Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review

15 is confined to "the state court's actual reasoning" and "actual analysis."  *Frantz*, 533 F.3d at 738

16 (emphasis in original).  A different rule applies where the state court rejects claims summarily,

17 without a reasoned opinion.  In *Richter*, *supra*, the Supreme Court held that when a state court

18 denies a claim on the merits but without a reasoned opinion, the federal habeas court must

19 determine what arguments or theories may have supported the state court's decision, and subject

20 those arguments or theories to § 2254(d) scrutiny.  *Richter*, 131 S. Ct. at 786.

21    C. "Unreasonable Determination Of The Facts"

22   Relief is also available under AEDPA where the state court predicated its adjudication of

23 a claim on an unreasonable factual determination.  Section 2254(d)(2).  The statute explicitly

24 limits this inquiry to the evidence that was before the state court.

25   Even factual determinations that are generally accorded heightened deference, such as

26 credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2).  For

27 example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief

28 where the Texas court had based its denial of a *Batson* claim on a factual finding that the

prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). *Id.* at 1001; accord *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II.     The Relationship of § 2254(d) To Final Merits Adjudication

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre-AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir.

7

2008) (en banc).  There is no single prescribed order in which these two inquiries must be conducted.  *Id.* at 736, 37.  The AEDPA does not require the federal habeas court to adopt any one methodology.  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap.  Accordingly, "[a] holding on habeas review that a state court error meets the § 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary."  *Frantz*, 533 F.3d at 736.  In such cases, relief may be granted without further proceedings.  *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1) unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis.   In such cases, the substantive claim(s) must be separately evaluated under a de novo standard.  *Frantz*, 533 F.3d at 737.  If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary hearing may be necessary.  *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

## DISCUSSION

I.    Failure to Properly Instruct on Self-Defense

Petitioner argues that his rights were violated when the trial court provided an erroneous self-defense instruction.

A.    Last Reasoned Decision

The court of appeal issued the last reasoned decision when it denied this claim on direct appeal:

8

Hale argues the trial court misinstructed the jury on self-defense and thereby violated his state and federal constitutional rights to due process and a fair jury trial. Williams in his reply brief joins in the argument, noting that since his liability is as an aider and abettor, Hale's instructional error argument concerning self-defense is applicable to him as well. We conclude Hale's argument lacks merit.

Hale's theory of the case, based on his own testimony, was that he shot the victim in self-defense during a spontaneous argument between the victim and Williams, into which Hale injected himself to support Williams, but which the victim escalated into a deadly fight by saying he "stay[s] strapped," and then making a "'reachin'" motion, which Hale said he interpreted as a move to pull out a gun. Hale claimed he was not trying to kill the victim but only "shoot him so we [Hale and defendant Williams] can get away."

The trial court instructed the jury on self-defense and imperfect self-defense. Using CALCRIM No. 505 concerning self-defense, the trial court told the jury: "A defendant is not required to retreat. He is entitled to stand his ground and defend himself and, if reasonably necessary, to pursue an assailant until the danger of great bodily injury has passed. This is so even if safety could have been achieved by retreating."

Using CALCRIM No. 3471, the trial court also instructed on initial aggressor/mutual combat as follows: "A person who engages in mutual combat or who starts a fight has a right to self-defense only if: [¶] 1. He actually and in good faith tried to stop fighting; [¶] AND [¶] 2. He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting. [¶] If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight. [¶] *However, if defendant Isaiah Hale used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting, communicate the desire to stop to the opponent, or give the opponent a chance to stop fighting*." (Italics added.)

The italicized text is an optional bracketed paragraph in CALCRIM No. 3471. It is the portion of the instruction at issue here. Hale belatedly complains the trial court should have added the words "*in safety*" to the bracketed language, so that it would read if Hale "could not withdraw *in safety* from the fight" after his opponent used deadly force, then Hale could use deadly force. He argues, "There was never any real dispute as to whether Mr. Hale could have retreated. He could have. The only real question was whether he could do so safely and — if not — whether he was nevertheless entitled to rely on self-defense." Hale claims the trial court "removed from the jury's consideration" whether he could have withdrawn *in safety*.

We agree with the People that Hale forfeited this argument by failing to object in the trial court. A party may not complain on appeal that a jury instruction correct in law and responsive to the evidence was

9

too general or too incomplete unless the party has requested appropriate clarifying or amplifying language in the trial court. (*People v. Lang* (1989) 49 Cal.3d 991, 1024, 264 Cal. Rptr. 386, 782 P.2d 627.) Hale argues there was no forfeiture because his contention is that the instruction given was incorrect, and such contentions may be raised for the first time on appeal under section 1259. Hale further argues that, if the contention was forfeited, then his trial counsel rendered ineffective assistance of counsel by failing to object in the trial court.

Even if not forfeited, the contention fails on its merits because the instruction does not use the word "withdraw" in a vacuum but rather in the context of withdrawing from a "sudden and deadly" escalation of the fight by the opponent. The California Supreme Court has used the term "withdraw" in this context interchangeably with "retreat in safety."

Specifically, in *People v. Hecker* (1895) 109 Cal. 451, 42 P. 307 (*Hecker*), the Supreme Court said the defendant was entitled to an instruction justifying the killing if the defendant "was put in such sudden jeopardy by the acts of the deceased that [the defendant] *could not withdraw . . . .*" (Id. at p. 461, superseded by statute on other grounds as stated in People v. Hardin (2000) 85 Cal.App.4th 625, 633, 102 Cal. Rptr. 2d 262, italics added.) Later in the opinion, the court explained the same concept as follows: "[i]f . . . the counter assault [by the deceased] be so sudden and perilous that no opportunity be given to decline or to make known to his adversary his willingness to decline the strife, if he cannot *retreat with safety*, then as the greater wrong of the deadly assault is upon his opponent, he would be justified in slaying, forthwith, in self-defense." (*Hecker*, at p. 464, italics added.) Based on our Supreme Court's usage of the two terms interchangeably, we reject Hale's contention the instruction on self-defense was wrong.

Hale cites *People v. Quach* (2004) 116 Cal.App.4th 294, 10 Cal. Rptr. 3d 196 (*Quach*), which reversed because the trial court failed to provide any instruction on how a defendant could respond if the opponent in mutual combat responds to a simple assault by using deadly force. (Id. at p. 303.) The *Quach* court observed that the trial court provided no instructions regarding "the rule that, 'Where the original aggressor is not guilty of a deadly attack, but of a simple assault or trespass, the victim has no right to use deadly or other excessive force. . . . If the victim uses such force, the aggressor's right of self-defense arises. . . .' [citation], or its corollary, 'If, however, the counter assault *be so sudden and perilous* that no opportunity be given to decline or to make known to his adversary his willingness to decline the strife, if *he cannot retreat with safety*, then as the greater wrong of the deadly assault is upon his opponent, he would be justified in slaying, forthwith, in self-defense.'" (*Id.* at pp. 301-302, citing *Hecker*, supra, 109 Cal. at pp. 463-464, italics added.) The Quach court went on to recognize instructional language that would address the situation where an opponent in mutual combat involving simple assault escalates the assault by responding with deadly force. First, it noted language approved in *People v. Sawyer* (1967) 256 Cal.App.2d 66, 63 Cal. Rptr. 749 (*Sawyer*), a case from this court.

The pertinent language in the Sawyer instruction read: "'*unless the attack is so sudden and perilous that he cannot withdraw*'" (*Sawyer*, at p. 75, fn. 2),[4] language that is similar to the language used in the CALCRIM instruction here. Hale cites the other instruction noted in *Quach*, an instruction that came from *People v. Gleghorn* (1987) 193 Cal.App.3d 196, 238 Cal. Rptr. 82. That instruction read: "'[W]here the counter assault is so sudden and perilous that no opportunity be given to decline further to fight and he *cannot retreat with safety* he is justified in slaying in self-defense.'" (*Gleghorn*, at p. 201, italics added.) It is the *Gleghorn* instruction Hale contends should have been given here. But in making that argument, he fails to note that the *Quach* court reversed because there was no "instruction *such as the one* approved in" *Gleghorn* and that the court also identified the instruction in *Sawyer* as such an instruction. (*Quach*, at pp. 302-303, italics added.) Given the *Quach* court's recognition of the instruction in *Sawyer*, we do not read *Quach* as requiring any specific language. Indeed, it seems clear from its reference to the *Sawyer* instruction that had that instruction been given by the trial court in *Quach*, the court of appeal would not have found error. Our view of this issue explains why the CALCRIM Committee included language in the optional bracketed paragraph in CALCRIM No. 3471 that more approximates the instruction in Sawyer and leaves out the redundant reference to "'with safety'" from the *Gleghorn* instruction.[5]

Here, in contrast to *Quach* where there was no instruction given such as the ones approved in *Sawyer* and *Gleghorn*, the trial court did instruct the jury on the principle that no retreat was necessary if the victim escalated the attack to "such sudden and deadly force that the defendant could not withdraw." Although the instruction did not use the words "with safety," as we have noted, no such talismanic words were needed. "[W]ithdraw from the fight [that had suddenly turned deadly]" and "retreat in safety" are the same thing. If the person is assaulted with sudden and deadly force while attempting to withdraw, then there was no actual withdrawal from the fight. The person would still be in the fight. In other words, withdrawing from the fight means the person has escaped from the fight. By definition, that means the person is safe.

---

[4] **[Footnote seven in original text]** The entire instruction approved by the court in Sawyer reads as follows: "'Where a person seeks or induces a quarrel which leads to the necessity in his own defense of using force against his adversary, the right to stand his ground and thus defend himself is not immediately available to him, but, instead he first must decline to carry on the affray, must honestly endeavor to escape from it, and must fairly and clearly inform his adversary of his desire for peace and of his abandonment of the contest *unless the attack is so sudden and perilous that he cannot withdraw*. Only when he has done so will the law justify him in thereafter standing his ground and using force upon his antagonist.'" (*Sawyer, supra*, 256 Cal.App.2d at p. 75, fn. 2.)

[5] **[Footnote eight in original text]** We also note that the CALCRIM No. Committee cites *Hecker*, *Quach*, and *Sawyer* in the bench notes, but not *Gleghorn*. (CALCRIM No. 3471, Bench Notes.)

Moreover, even assuming for the sake of argument that the instruction was ambiguous, it is not reasonably likely the jurors here would have applied the instruction improperly. (*People v. Williams* (2013) 56 Cal.4th 630, 688-689, 156 Cal. Rptr. 3d 214, 299 P.3d 1185, citing *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [112 S. Ct. 475, 116 L.Ed.2d 385, 399] [in reviewing an ambiguous instruction, courts inquire whether there is a reasonable likelihood the jury applied the instruction in a way that violates the Constitution].) Hale argues *Quach*, supra, 116 Cal.App.4th at page 303, requires application of the harmless error test of *Chapman v. State of California* (1967) 386 U.S. 18 [87 S. Ct. 824, 17 L.Ed.2d 705]. But *Quach* said this standard applied to *erroneous* instructions. (*Quach*, at p. 303.) Here, the issue would be an ambiguous instruction, not an erroneous instruction. In any event, the error is harmless under any standard.

We note that the prosecutor did not misuse the instruction in closing argument to the jury or exacerbate the purported ambiguity. She argued that Hale was the initial aggressor, and the victim was not a mutual combatant. She highlighted Hale's testimony that he was not scared when the victim said he had a gun, and therefore he kept walking toward the victim, assertedly in order to better hear what the victim was saying. In support of her theory that Hale acted with deliberation rather than in self-defense, the prosecutor argued, "Like really? What would [the victim] be saying that was so important at that point in time after he just said I stay strapped according to [Hale] that you're gonna run up on that person. That's ridiculous." The prosecutor did not argue the law required that Hale try to escape regardless of whether it was safe to do so before he could respond to deadly force with deadly force.

Furthermore, it is not reasonably likely the jurors would have thought a person had to withdraw at the risk of being killed or injured when the purpose of self-defense is to avoid being killed or injured. Contrary to Hale's argument, there was no federal constitutional error here precluding or limiting the jury from full consideration of Hale's theory of the case.[6]

---

[6] **[Footnote nine in original text]** Hale contends the length of deliberations, about 19 hours, shows this was a close case. (E.g., *People v. Cardenas* (1982) 31 Cal.3d 897, 907, 184 Cal. Rptr. 165, 647 P.2d 569.) We disagree. The jury deliberated for one hour on the first day of deliberations, returned the next day and deliberated from 9:00 a.m. to 4:30 p.m. (during which the jury asked a question about aiding and abetting culpability for discharge of the firearm). The third day, the jury deliberated from 9:00 a.m. to 4:30 p.m. The fourth day, the jury deliberated from 9:00 a.m. until 4:15 p.m., when they sent the court a note that they had reached a verdict on everything except one count for one person. The jury did not request additional instructions on self-defense during deliberations. The following morning, the trial court entered the verdicts on count two and declared a mistrial as to count one, shooting at an inhabited dwelling, alleged against Williams only. A little more than three days of deliberations does not prove a close case, because the case involved two incidents and two defendants with multiple issues, and the jury was unable to reach a verdict on the count related to the first incident involving the drive-

Finally, any instructional error here is harmless by any standard given the lack of evidence of mutual combat or that Hale started a fight. Hale did not physically fight the victim. The victim did testify that Hale asked if the victim was the person who got his gun "'took'" or something to that effect and then said something to the victim like, "'Nigga, you got my gun took. You think we playing,'" before Hale began shooting. According to Hale's own testimony, he never fought the victim, there was no physical assault occurring when he circled around the pickup and approached the victim and Hale had not used non-deadly force against the victim. There was only an exchange of words. Hale claimed he pulled out his gun and began shooting because the victim had said he was "strapped" and reached toward his waistband.

As noted, CALCRIM No. 3471, as read to the jury in this case, begins, "A person who *engages in mutual combat or who starts a fight* . . . ." It goes on to say in the optional bracketed language at issue here, "*if defendant Isaiah Hale used only non-deadly force*, and the opponent responded with such sudden and deadly force . . . ." Thus, non-deadly assaultive conduct by a defendant is a predicate to the application of the optional bracketed paragraph in CALCRIM No. 3471. That predicate is missing here and consequently, no reasonable jury could have found self-defense or imperfect self-defense based on CALCRIM No. 3471, even if the words "with safety" had been added.[7]

We conclude there was no instructional error regarding initial aggressor/mutual combat and, even assuming error, it was harmless under any standard.

Lodg. Doc. No. 10 at 13-20.  Petitioner raised this claim in his petition for review to the

_____

by shooting at the victim's home. The length of deliberations could as easily be reconciled with the jury's conscientious performance of its civic duty, rather than a close case on the attempted murder charge. (*People v. Houston* (2005) 130 Cal.App.4th 279, 301, 29 Cal. Rptr. 3d 818.)

[7] **[Footnote ten in original text]** We have discussed the wording of the initial aggressor/mutual combat instruction here because the instruction was given for the jury to consider, and Hale has argued that the trial court had a sua sponte duty to add language to the instruction and trial counsel was constitutionally ineffective for failing to ask for that language. But we also note that the trial court would not have abused its discretion if it had not given the instruction. The optional bracketed paragraph in the instruction only applies where the defendant has committed a simple assault. This was recently clarified by our high court. In *People v. Salazar* (2016) 63 Cal.4th 214, 202 Cal. Rptr. 3d 638, 371 P.3d 161, the court wrote: "Defendant claims the self-defense instructions were incomplete because they did not include the principle that '"where [a] counter assault is so sudden and perilous that no opportunity be given to decline further to fight and [the defendant] cannot retreat with safety he is justified in slaying in self-defense."' [Citations.] [Fn. omitted.] However, as the *Gleghorn* and *Quach* courts made clear, *this qualification only applies where the defendant commits a simple assault.*" (*Id.* at p. 249, italics added.)

1  California Supreme Court.  Lodg. Doc. No. 11.  That petition was summarily denied.  Lodg. Doc.

2  No. 12.

3          B.      Relevant Federal Law

4          The Supreme Court has "repeatedly held that a state court's interpretation of state law,

5  including one announced on direct appeal of the challenged conviction, binds a federal court

6  sitting in habeas corpus." *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).  It

7  follows that challenges to state jury instructions based on errors of state law are not cognizable on

8  federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize

9  that it is not the province of a federal habeas court to reexamine state-court determinations on

10 state-law questions.").  Nevertheless, habeas relief may be available where a petitioner can

11 demonstrate that "the ailing instruction by itself so infected the entire trial that the resulting

12 conviction violates due process."  *Id.* at 72.

13         C.      Analysis

14         Consistent with the foregoing, this court may not grant habeas relief on this claim merely

15 because the instruction was (allegedly) incorrect or incomplete as a matter of state law.  The only

16 question is whether the instruction, as articulated, resulted in a conviction that violates due

17 process.  The burden of demonstrating as much lies with petitioner and he has failed to carry it.

18 He argues that:

19          Certainly some jurors could have believed that petitioner could not
            invoke self-defense because he could withdraw - that is remove
20          himself - from the fight.  Such jurors, on learning that petitioner was
            required not only to remove himself, but also to remove himself in
21          safety from the situation, could easily have found that petitioner was
            not guilty of murder because he was justified in acting in self-
22          defense.

23 ECF No. 1 at 23-24.  Such contentions are insufficient.  A habeas petitioner bears the burden of

24 showing "not merely that the errors at his trial constituted a possibility of prejudice, but that they

25 worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of

26 constitutional dimension."  *United States v. Frady,* 456 U.S. 152, 170 (1982).  Petitioner's failure

27 /////

28 /////

14

1 to point to any concrete evidence of prejudice precludes a finding that this instruction infected his

2 entire trial and rendered it constitutionally unfair.[8]

3       II.      Ineffective Assistance by Trial Counsel

4       Petitioner argues that his trial counsel was constitutionally ineffective in failing to object

5 to the trial court's erroneous self-defense instruction (the subject of the foregoing claim). He

6 raised this claim on direct appeal and the state court of appeal acknowledged it but did not

7 address it in any detail. ECF No. 9-10 at 14. Nevertheless, as respondent persuasively argues,

8 this claim was resolved when that court determined that the instructional error claim – upon

9 which the ineffective assistance claim was contingent – lacked merit. In light of the fact that the

10 state court of appeal determined that the trial court's instruction was correct as a matter of state

11 law, it cannot be concluded that his trial counsel was constitutionally ineffective in failing to

12 object to it. *See Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (holding that "[f]ailure to

13 raise a meritless argument does not constitute ineffective assistance").

14       III.      Entitlement to a Jury Trial and Sufficient Evidence as to Prior 'Strike' Conviction

15       Petitioner's last two claims bear on the state court determination that a prior conviction

16 counted as a 'strike' pursuant to Cal. Pen. Code § 667(e)(1).[9] The court will address them

17 together.

18 /////

19 /////

20 /////

21 /////

22

---

23     [8] Because the court finds that this claim fails on its merits, it does not reach respondent's
alternative argument that this claim is procedurally barred.

24

25     [9] This section provides that:

26         If a defendant has one prior serious and/or violent felony conviction
as defined in subdivision (d) that has been pled and proved, the
determinate term or minimum term for an indeterminate term shall

27         be twice the term otherwise provided as punishment for the current
felony conviction.

28

A.     <u>Last Reasoned Decision</u>

On direct appeal, the state court of appeal held:

## B. Nature of the Prior Conviction Alleged as a Strike

### 1. Hale's Contentions

Hale argues the trial court improperly used his prior battery with serious bodily injury conviction (§ 243, subd. (d))[10] as a strike to double his sentence (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).[11] Defendant notes that battery with serious bodily injury is not a strike unless he personally inflicted the injury on a person who was not an accomplice. (§ 1192.7, subd. (c)(8) ["'serious felony'" includes "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice"].) Hale argues: (1) there was insufficient evidence that he personally inflicted injury[12] or that the victim was not an accomplice; (2) these two factual questions should have been submitted to the jury and the failure to so instruct violated defendant's Sixth Amendment right to a jury trial; and (3) double jeopardy precludes retrial of the prior conviction.

We agree that Hale had a constitutional right to a jury determination of the personal infliction and non-accomplice elements related to the strike allegation. However, we conclude that the error was harmless beyond a reasonable doubt.

---

[10] **[Footnote eleven in original text]** Section 243, subdivision (d), states, "When a battery is committed against any person and serious bodily injury is inflicted on the person, the battery is punishable by imprisonment in a county jail not exceeding one year or imprisonment in the state prison for two, three, or four years."

[11] **[Footnote twelve in original text]** Under section 667, subdivision (e)(1), and section 1170.12, if a defendant has one prior serious or violent felony conviction, as defined in section 667.5 or 1192.7, "that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction." (§ 1170.12, subd. (c)(1).)

[12] **[Footnote thirteen in original text]** Normally in the context of this type of serious felony, the inquiry is three pronged: "[W]hether the prior conviction involved (1) personal infliction, (2) of great bodily injury, (3) on any person other than an accomplice." (*People v. Wilson* (2013) 219 Cal.App.4th 500, 511, 162 Cal. Rptr. 3d 43 (*Wilson*), citing § 1192.8, subd. (a).) Hale provides no argument on appeal that the evidence was insufficient to establish that the injury inflicted was great bodily injury. His focus is on the personal infliction and non-accomplice elements.

## 2. Additional Background

Hale in his trial testimony admitted he was convicted in 2009 of "a felony violation of 243(d)." When asked what kind of case it was, Hale said, "Domestic violence." When asked "to who was that with?" Hale answered, "The mother of my son."

Additionally, the People submitted exhibit 36, minutes and minute orders from the prior conviction, certified by the superior court clerk, which show that on March 13, 2009, before Judge Tochterman in Sacramento County, Hale pleaded nolo contendere to a single count of violating section 243, subdivision (d). On April 8, 2009, Judge Winn granted Hale probation conditioned in part on Hale's participation in a batterer's treatment program "pursuant to Section 273.5(e) [sic: (f)][13] and/or 1203.[0]97(a)(6)."[14] The typewritten order of probation states, "Count 2 as a strike." The minute order of the March 13, 2009, plea before Judge Tochterman bears a handwritten notation, "4/8/09 Judge Winn said Ct 2 as a strike."[15]

The jury in this case found Hale had a prior conviction in 2009 for battery with serious bodily injury in violation of section 243, subdivision (d). CALCRIM No. 3100, the standard instruction given for prior convictions, was given by the trial court. The court did not tell the jury it needed to determine whether the prosecution had proved the personal infliction and non-accomplice elements beyond a reasonable doubt.

On the day set for sentencing, Hale moved to strike the prior conviction (§ 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 53 Cal. Rptr. 2d 789, 917 P.2d 628) on various grounds, including that "the facts underlying the strike as indicated in the probation report are minor in the sense that it was a swollen eye and a small laceration . . . ." The probation report for the current case described the incident underlying the 2009 conviction: "During a verbal argument that turned physical, the 18-year-old female victim reported that her boyfriend/defendant punched her in the face causing her to fall to the ground. The victim sustained a swollen eye and a

---

[13][**Footnote fourteen in original text**] Section 273.5, subdivision (f), provides that probation granted in a domestic violence case is subject to conditions in section 1203.097.

[14] [**Footnote fifteen in original text**] Section 1203.097, subdivision (a), states, "If a person is granted probation for a crime in which the victim is a person defined in Section 6211 of the Family Code, the terms of probation shall include . . . [¶] . . . [¶] (6) Successful completion of a batterer's program . . . ." Section 6211, subdivision (d), of the Family Code defines "'[d]omestic violence'" to include abuse perpetrated against a person with whom the perpetrator has had a child.

[15] [**Footnote sixteen in original text**] The exhibit does not contain the charging document or a reporter's transcript of the plea or sentencing, and there is no indication that the trial court in the current case had before it any other documents from the court's file of the prior case.

small laceration above her eye. The victim was transported to Mercy San Juan Hospital for further treatment."

The trial court denied the motion to strike the prior conviction. The court acknowledged it had discretion but said, "I think it would be an abuse of my discretion to strike Mr. Hale's [prior conviction] in light of the fact that he was on probation for a serious and violent felony [the 2009 conviction] at the time he committed the instant offense. I would note that the felony conviction was against a female, a person to whom it appears that he was in a dating relationship with [sic]. She did receive a significant injury, and so I will decline to strike Mr. Hale's prior." The trial court thus implicitly found that the nature of the prior conviction qualified as a strike.

### 3. Applicable Legal Principles

For purposes of three strikes sentencing, the prosecution has the burden to prove beyond a reasonable doubt that alleged prior convictions qualify as strikes. (*People v. Miles* (2008) 43 Cal.4th 1074, 1082, 77 Cal. Rptr. 3d 270, 183 P.3d 1236 (*Miles*).) Where the mere fact of the conviction does not prove the offense was a serious felony, the nature of the conviction may be proved by the defendant's admissions or "otherwise admissible evidence from the entire record of the conviction." (*Ibid.*) "A court document, prepared contemporaneously with the conviction, as part of the record thereof, by a public officer charged with that duty, and describing the nature of the prior conviction for official purposes, is relevant and admissible on this issue." (*Ibid.*; see also Evid. Code, § 452.5 [certified copy of official record of conviction is admissible to prove commission of prior conviction or other act, condition, or event recorded by the record].)

"[I]f the prior [offense] was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense." (*Miles*, *supra*, 43 Cal.4th at p. 1083.) "In such a case, if the serious felony nature of the prior conviction depends upon the particular conduct that gave rise to the conviction, the record is insufficient to establish that a serious felony conviction occurred." (*Ibid.*) "On the other hand, the trier of fact may draw reasonable inferences from the record presented. Absent rebuttal evidence, the trier of fact may presume that an official government document, prepared contemporaneously as part of the judgment record and describing the prior conviction, is truthful and accurate. Unless rebutted, such a document, standing alone, is sufficient evidence of the facts it recites about the nature and circumstances of the prior conviction." (*Ibid.*)

On review for sufficiency of the evidence concerning a prior conviction, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt. (*Miles*, *supra*, 43 Cal.4th at p. 1083.)

Section 1170.12 calls for doubling Hale's sentence if he has a prior conviction for a serious or violent felony as defined in sections 667.5 or 1192.7. (§ 1170.12, subds. (b)-(c).) Battery with serious bodily injury under section 243, subdivision (d), is not expressly listed in sections 667.5 or 1192.7 and is therefore not necessarily a strike. (*People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508, 50 Cal. Rptr. 3d 161 (*Bueno*).) However, section 1192.7, subdivision (c)(8), provides that "'serious felony'" includes "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice." The element of serious bodily injury under section 243 is essentially equivalent to the great bodily injury element required for a serious felony sentencing enhancement under sections 667 and 1192.7. (*Bueno*, at p. 1508, fn. 5; *People v. Moore* (1992) 10 Cal.App.4th 1868, 1871, 13 Cal. Rptr. 2d 713 (*Moore*).)

**4. Analysis**

Hale argues there was insufficient evidence that he personally inflicted injury on a non-accomplice.

However, Hale testified the battery was domestic violence against the mother of his child. This constitutes conclusive evidence that the injured person was not Hale's accomplice in inflicting the battery. The person who was hurt was the victim of the crime for which defendant was convicted, a crime defendant characterized as domestic violence, as opposed to assisted suicide or some crime where the victim could also be an accomplice to the commission of the crime. For example, this is clearly not a case where a confederate was injured by a coperpetrator during the commission of some other felony.

As to personal infliction by Hale, he argues there is no evidence that he personally inflicted the injuries on the mother of his child. We disagree. Even if we do not consider the handwritten and typed notations that the conviction was a "strike" in the record of conviction, the trial court in the 2009 case specifically required that Hale himself participate in a "batterer's treatment program" as a condition of probation. The sentencing record is a record of conviction that may be used to establish the nature of a strike conviction. (See *People v. Smith* (1988) 206 Cal.App.3d 340, 345, 253 Cal. Rptr. 522 [transcript of the sentencing hearing is a record of conviction]; *People v. Colbert* (1988) 198 Cal.App.3d 924, 930, 244 Cal. Rptr. 98 [abstract of judgment is a record of conviction admissible to prove a strike allegation].) Based on Hale's testimony and the condition of probation noted in the records admitted to prove the strike, it was reasonable for the trier of fact in the current case, here the trial court, to infer that Hale was the one who inflicted the injuries on the mother of his child in the 2009 case. (*Miles, supra*, 43 Cal.4th at p. 1083 ["trier of fact may draw *reasonable inferences* from the record presented"]; *People v. Ledbetter* (2014) 222 Cal.App.4th 896, 900-901, 166 Cal. Rptr. 3d 448 [same].)

Moreover, we disagree with Hale that a trier of fact could not consider the notations on the 2009 minute orders that indicate Hale pled to a strike. Hale characterizes these notations as being "curious"

19

because one handwritten notation on the March 13, 2009, minutes was dated April 8, 2009. Hale also argues the notations are unreliable hearsay of individual judge's minutes. However, the postdated handwritten notation does not detract from the typewritten statement in the April 2009 probation order that the conviction was a strike. The 2009 court records indicating the battery was a "strike" are admissible to show Hale pleaded no contest to a strike. (Evid. Code, §§ 452.5 [certified copy of official record of conviction is admissible to prove commission of prior conviction or other act, condition, or event recorded by the record], 664 ["[i]t is presumed that official duty has been regularly performed"].) We reject Hale's unsupported assertion that we should reject as meaningless "opinion" the sentencing judge's inclusion in the probation order that the conviction was a strike. As we have noted, "the trier of fact may draw reasonable inferences from the record presented. Absent rebuttal evidence, the trier of fact may presume that an official government document, prepared contemporaneously as part of the judgment record and describing the prior conviction, is truthful and accurate. Unless rebutted, such a document, standing alone, is sufficient evidence of the facts it recites about the nature and circumstances of the prior conviction." (*Miles*, *supra*, 43 Cal.4th at p. 1083.)

We conclude substantial evidence supports the conclusion that the 2009 conviction was a serious felony offense and thus a strike within the meaning of the three strikes law. However, as we shall now discuss, the trial court should not have been the trier of fact.

**C. Right to Jury Trial on the Strike Allegation[16]**

**2. Analysis**

In *People v. McGee* (2006) 38 Cal.4th 682, 708-709, 42 Cal. Rptr. 3d 899, 133 P.3d 1054 (*McGee*), the California Supreme Court held that a defendant has no federal constitutional right to a jury determination as to whether a prior conviction qualifies as a serious felony. Rather, whether the nature of the prior conviction met the requirements for a strike was a matter to be determined by the trial court, even when the trial court was required to determine facts underlying the conviction. (*Ibid.* [no Sixth Amendment right to a jury trial regarding whether a Nevada robbery conviction qualified as a

_____

[16] **[Footnote seventeen in original text]** The People contend that defendant has forfeited his Sixth Amendment claim by not raising it in the trial court. A challenge to the sufficiency of the evidence, founded in a violation of the Sixth Amendment right to jury trial, is cognizable on appeal without objection to the evidence in the trial court. (*People v. McCaw* (2016) 1 Cal.App.5th 471, 477, fn. 3, 203 Cal. Rptr. 3d 914 (*McCaw*), citing *People v. Trujillo* (2010) 181 Cal.App.4th 1344, 1350, fn. 3, 105 Cal. Rptr. 3d 316 ["an argument that the evidence is insufficient to support a verdict is never waived"].) Moreover, the claim is not forfeited because the trial court was not authorized to impose an enhanced sentence without a jury determination on the factual issues of personal infliction and non-accomplice victim, and "'[i]f a trial court imposes a sentence unauthorized by law, a reviewing court may correct that sentence whenever the error is called to the court's attention.'" (*Wilson*, *supra*, 219 Cal.App.4th at p. 518.)

strike conviction where the elements of robbery in Nevada were different than in California, but defendant's conduct as reflected in the record of conviction was conduct that would constitute a serious felony under California law].)

The *McGee* court recognized, however, that the United States Supreme Court was yet to weigh in on this issue. The court wrote: "Unless and until the high court directs otherwise, we shall assume that the precedents from that court and ours support a conclusion that sentencing proceedings such as those conducted below do not violate a defendant's constitutional right to a jury trial. Although we recognize the possibility that the high court may extend the scope of the Apprendi decision . . . , we are reluctant, in the absence of a more definitive ruling on this point by the United States Supreme Court, to overturn the current California statutory provisions and judicial precedent that assign to the trial court the role of examining the record of a prior criminal proceeding to determine whether the ensuing conviction constitutes a qualifying prior conviction under the applicable California sentencing statute. . . . [W]e are not prepared to assume that the high court will interpret the federal constitutional right to a jury trial as requiring a state to assign this function to a jury." (*McGee*, *supra*, 38 Cal.4th at p. 686.)

The United States Supreme Court spoke on this matter in *Descamps v. United States* (2013) ___ U.S. ___ [133 S. Ct. 2276, 186 L.Ed.2d 438]. Following *Descamps*, several courts of appeal have concluded that criminal defendants have a Sixth Amendment right to have a jury determine whether conduct underlying a prior conviction qualifies the conviction as a serious felony offense. (*McCaw*, *supra*, 1 Cal.App.5th at pp. 484-485 [Sixth Amendment right to jury trial was violated where the trial court determined a New York robbery qualified as a California strike based on the New York plea transcript showing that the defendant took property from the robbery victim's person]; *People v. Denard* (2015) 242 Cal.App.4th 1012, 1030-1031, 195 Cal. Rptr. 3d 676 [right to jury trial was violated by trial court's use of facts in a Florida probable cause affidavit to establish that conduct underlying the prior conviction constituted a strike]; *People v. Saez* (2015) 237 Cal.App.4th 1177, 1207, 189 Cal. Rptr. 3d 72 ["while *Descamps* did not explicitly overrule *McGee*, *Descamps*'s discussion of the Sixth Amendment principles applicable when prior convictions are used to increase criminal sentences is clear and unavoidable"; determination by trial court that the defendant personally used a firearm from the record of conviction violated the defendant's Sixth Amendment right to jury trial].)

Two of the post-*Descamps* court of appeal cases involved the elements at issue here — whether the defendant *personally inflicted* great bodily injury on a *non-accomplice* in the commission of the prior conviction offense. (*People v. Marin* (2015) 240 Cal.App.4th 1344, 1363, 193 Cal. Rptr. 3d 294 [prior conviction for vehicular manslaughter; under *Descamps*, judicial factfinding authorized by *McGee*, going beyond the elements of the crime to determine whether the record of conviction reveals whether the conviction was based on conduct that would constitute a serious felony under California law violates the Sixth Amendment]; *Wilson*, *supra*, 219

Cal.App.4th at p. 516 [prior conviction for vehicular manslaughter while intoxicated; "[a] court may not impose a sentence above the statutory maximum based on disputed facts about prior conduct not admitted by the defendant or implied by the elements of the offense"].)

We agree with the reasoning in these cases. *Descamps* represents the guidance the California Supreme Court indicated was needed from the high court before it could be said that a judicial determination of whether conduct underlying prior convictions constitutes a serious felony offense violates the Sixth Amendment right to jury trial. (See *McGee*, *supra*, 38 Cal.4th at p. 709.) The determination of whether a defendant personally inflicted the victim's injuries and whether the victim was an accomplice must be made by a jury, unless a jury trial is waived by the defendant.

**3. Harmless Error**

Even though Hale was entitled to a jury determination regarding the personal infliction and non-accomplice elements of the serious felony conviction allegation, we need not reverse if we conclude the error was harmless. "'Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error.' [Citation.] 'Such an error does not require reversal if the reviewing court determines it was harmless beyond a reasonable doubt, applying the test set forth in *Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.'" (*Wilson*, *supra*, 219 Cal.App.4th at pp. 518-519, quoting *People v. French* (2008) 43 Cal.4th 36, 52-53, 73 Cal. Rptr. 3d 605, 178 P.3d 1100 (*French*) ["'The failure to submit a sentencing factor to a jury may be found harmless if the evidence supporting that factor is overwhelming and uncontested, and there is no 'evidence that could rationally lead to a contrary finding.'"].)

We conclude beyond a reasonable doubt that a jury would have found Hale's strike allegation true. The evidence supporting findings on the elements at issue is compelling and uncontested. There is no evidence that could rationally lead to a contrary finding. (*French*, *supra*, 43 Cal.4th at pp. 52-53.)

As we have noted, serious bodily injury is the equivalent of great bodily injury for strike enhancements. (*Bueno*, *supra*, 143 Cal.App.4th at p. 1508, fn. 5; *Moore*, *supra*, 10 Cal.App.4th at p. 1871.) Defendant admitted the prior conviction was one of domestic violence involving the mother of his child. For the reasons we have stated, the victim could not have been an accomplice. Defendant was ordered to attend a batterer's treatment program. It can be reasonably inferred from these facts that defendant personally inflicted the injury, even without consideration of the notations on the court documents. However, the notations on the minute orders provide additional evidence that Hale pled to a strike. There can be no contrary rational conclusion.

> The error in the trial court determining that Hale's prior conviction is a serious felony offense and thus a strike, is harmless beyond a reasonable doubt.

Lodg. Doc. No. 10 at 20-30. Petitioner raised both claims in his petition for review to the California Supreme Court. Lodg. Doc. No. 11. As noted *supra*, the California Supreme Court summarily denied that petition. Lodg. Doc. No. 12.

### B. Relevant Federal Law

#### 1. Jury Trial

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). An error under *Apprendi* is subject to review for harmless error. *Washington v. Recuenco*, 548 U.S. 212, 222 (2006). The appropriate standard of review is found in *Neder v. United States*, 527 U.S. 1 (1999) which explained that an error is harmless where the record contains "overwhelming" and "uncontroverted" evidence supporting an element of the crime. *See United States v. Zepeda-Martinez*, 470 F.3d 909, 913 (9th Cir. 2006). By contrast, an error is not harmless where "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding." *Id.* When a state court determines that a constitutional violation is harmless, the harmlessness determination itself must be unreasonable. *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003).

#### 2. Sufficiency of the Evidence

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The Supreme Court announced the federal standard for determining the sufficiency of the evidence to support a conviction in *Jackson v. Virginia*, 443 U.S. 307 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

The Supreme Court has explicitly noted, however, that "[w]e have not extended *Winship*'s protections to proof of prior convictions used to support recidivist enhancements." *Dretke v. Haley*, 541 U.S. 386, 395 (2004).

C.    Analysis

The state court of appeal's determination of these claims was not unreasonable. The record indicated that: (1) petitioner had previously been convicted of felony domestic violence (ECF No. 9-5 at 111); (2) the victim of that crime was the mother of petitioner's child (*id.*); (3) petitioner was, in connection with the 2009 felony, sentenced to probation on the condition that he participate in a batterer's treatment program (ECF No. 9-3 at 8); and (4) the minute order of petitioner's 2009 plea bore a notation indicating that it was a strike (*id.* at 9). Based on the foregoing, the court of appeal was reasonable in concluding that there was sufficient evidence by which to conclude that petitioner – who had been convicted of domestic violence - personally inflicted injury on a non-accomplice – the mother of his child. This conclusion is further bolstered by the sentencing requirement that petitioner enroll in a batterer treatment program. Assuming the *Winship* protections apply here, the standard announced in *Jackson* was clearly met. The evidence supporting the fact that he personally inflicted injury on a non-accomplice was overwhelming.

And, in light of the foregoing, the court finds that the state court of appeal was not unreasonable in concluding that failure to submit the issue to a jury was harmless. Notably, plaintiff failed to present any evidence of his own which meaningfully rebuts the convincing evidence relied on by the court of appeal. Instead, he relies primarily on the Supreme Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013). He claims that *Descamps* forbids the review of documents – of the sort conducted by the court of appeal in this case – to "discern what a trial showed, or a plea revealed, about a defendant's underlying conduct." ECF No. 1 at 28 (quoting *Descamps*, 570 U.S. at 269). *Descamps*, however, only "clarified application of the modified categorical approach in light of existing precedent." *Ezell v. United States*, 778 F.3d 762, 766 (9th Cir. 2015). "*Descamps* is a statutory interpretation case: It clarifies when certain crimes qualify as violent felonies under the ACCA [Armed Career Criminal Act], a congressional

enactment." *Id.  Descamps* did not "impose a new obligation nor did it break new ground" nor did it announce a new rule of constitutional law. *Id.* at 766-67.  It certainly did not, as respondent points out, overrule the Supreme Court's previous decisions in *Recuenco* or *Neder*.

Thus, both claims fail.

CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  October 29, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE